JOHN MAHON & others vs. FRANCIS D. BLAKE & others.

Bristol. October 25. — 26, 1878. ENDICOTT & LORD, JJ., absent.

If goods are sent by a common carrier to be delivered to A., the carrier is not justi-
fied in delivering them at the store of B., although A. has guaranteed the rent of
the store, and has been compelled to pay it.

An allegation, that a common carrier agreed "to deliver to E. T. Learned" certain
goods, is supported by evidence that the carrier clearly understood him to be the
person for whom the goods were intended, although the name marked thereon was
" E. D. Leonard."

A count in contract for non-delivery may be joined with a count in tort for the mis-
delivery of goods, if there is doubt as to the legal effect of the facts relied upon
to maintain the action.

CONTRACT against common carriers doing business under the
name of the Kinsley Express Company. The declaration al-
leged that on or about May 21, 1875, the plaintiffs, by their
agents, delivered to the defendants, at Boston, certain cases of
boots and shoes, which the defendants undertook and agreed to
carry to Fall River, and to deliver to E. T. Learned, of said Fall
River; that the defendants neglected and refused to deliver said
goods and chattels to said Learned, though often requested so to
do, and still neglect and refuse so to do; that the defendants
owed the plaintiffs for said goods and chattels $182.70. There
was also a count in tort for the conversion of the said boots and
shoes. Trial in the Superior Court, before *Gardner*, J., who
allowed a bill of exceptions in substance as follows :

It was admitted that the plaintiffs sent the goods mentioned
in the declaration, by express from Lynn to Boston, marked
" Dr. E. D. Leonard, Fall River, Mass.," and that the defend-
ants received them at Boston, and carried them to Fall River.
The plaintiffs testified that by "Dr. E. D. Leonard" they in-
tended one Dr. E. T. Learned, a physician of Fall River ; and
there was evidence that the defendants had said they had no
doubt that Dr. E. T. Learned was intended, and that no such
person as Dr. E. D. Leonard, or any one of a similar name, was
known to live in Fall River ; that Dr. E. T. Learned lived on
Highland Avenue, and had an office on North Main Street,
some distance from 81 South Main Street, where W. B. Hunt,
Learned's son in law, had a store, and where the evidence tended
to show that the goods were delivered.

It appeared that, prior to the sending of the goods, the plain·
tiffs had no conversation or communication in any way with Dr.
Learned.   The latter denied any knowledge of the sale, and
testified that he did not know of the sending of the goods in his
name till a long time after the transaction, and never received
them or any of their proceeds; that he had no connection in a.
business way with Hunt, and never authorized Hunt in any way
to use his name, and was not himself engaged in the boot and
shoe business.

W. B. Hunt testified that he gave the order to the plaintiffs'
agent, and told him to send the goods to S. T. Hunt, his wife,
81 South Main Street, Fall River, Mass.; that he did not offer
the name of Dr. Learned, for whom he had no authority to act,
and gave no instruction to send the goods to him; and that he
went to the defendants' office in Fall River, and directed that
the goods should be left at his store.

The defendants offered evidence tending to show that Hunt
was Learned's agent in all matters relating to the shoe store;
that Learned was in reality the owner of Hunt's store; and that
the relations between them were such that a delivery at the
store was a sufficient delivery to Learned.   It was admitted that
Learned had guaranteed, and afterwards, by reason of such guar
anty, paid the rent, for about a month, of Hunt's store; that
he guaranteed several bills for goods purchased by Hunt, and
had supplied him with about $2300 capital; that he was in the
store almost every day, and had a chattel mortgage, taken as
security for the $2300, on all the stock and goods in the store at
the time the goods in controversy were delivered, but not includ-
ing these goods.   It also appeared that Hunt went away about a
month after the goods were delivered, and Learned took posses-
sion of the store, sold the stock and fixtures, and, after paying
the bills guaranteed, turned over the balance to Hunt's wife.

The defendants requested the judge to instruct the jury as
follows : " 1. The count in trover cannot be maintained against
the defendants on the declaration in this action, as the plaintiffs
have not proved a demand on the defendants for the property
alleged to have been converted, previous to the commencement
of the action.  2. The jury are to judge whether or not the rela·
tions of Dr. Learned with his son in law were such that a deliv·

ery at the store No. 81 South Main Street was a sufficient delivery. It is not necessary that the goods be delivered at the house of the consignee; delivery at any place under his control or authority is sufficient. Delivery at a store for which he pays the rent is sufficient. 3. The plaintiffs cannot recover on the declaration, as there is a variance between that and the proof, the declaration alleging that the goods were marked 'E. D. Leonard,' and it now appears that there was no such person; and if the goods were sent to a consignee not in existence, the defendants cannot be held for non-delivery."

The judge fully instructed the jury upon all parts of the case, including the title to the goods and the sufficiency of the delivery by the defendants, and, at the plaintiffs' request, instructed them that there was no evidence of a sale of the goods by the plaintiffs to Learned personally, to which instructions no exception was taken by the defendants.

The judge declined to give the first instruction requested by the defendants; but instructed the jury, that, if the defendants delivered these goods to a person who had no right to receive them, or at a place unauthorized, and this put it out of their power to deliver them to the person entitled to them, an action of trover could be maintained to recover their value without any previous demand; but that this form of action could not be maintained for mere non-delivery without a previous demand.

The judge gave the second instruction requested, with the exception of the last sentence, which he declined to give; and also instructed the jury that it was the duty of the defendants to deliver the goods to the consignee in person, or at his dwelling-house, or usual place of business, or to his duly authorized agent, or at some place under his authority and control, provided he had there a servant or agent authorized to receive them; but the mere fact that he guaranteed the payment of the rent of a store, and under such guaranty was compelled to pay it, would not of itself justify the defendants in delivering the goods at such store; and also gave instructions, not objected to, as to what would constitute the relation of principal and agent between Hunt and Learned.

The judge declined to give the third instruction requested, but instructed the jury that if the goods were sent to a person not

in existence, then the defendants could not be held for non-deliv ery; but if the name in the declaration and that marked on the goods were so nearly alike that the defendants understood that the goods were meant for Dr. E. T. Learned, and there was no uncertainty as to the person intended, and there was no other person in Fall River whom they could reasonably have been in tended for, and they were in fact meant for him, then there was no variance.

The jury returned a verdict for the plaintiffs; and the defendants alleged exceptions.

*M. Reed*, for the defendants.

*J. M. Morton, Jr.*, for the plaintiffs, was not called upon.

BY THE COURT. None of the positions taken in the argument for the defendants can be maintained.

1. The bill of exceptions expressly states that no exception was taken by the defendants to the instruction that there was no evidence of a sale of the goods by the plaintiffs to Dr. Learned personally.

2. The question of the place at which the defendants might deliver the goods to the consignee was submitted to the jury under apt and sufficient instructions; and it was rightly ruled that the mere fact that the consignee guaranteed the payment of the rent of the building, and was thus compelled to pay it, would not of itself justify the defendants in delivering the goods there.

3. There was no variance. The allegation that the defendants agreed to deliver to E. T. Learned was supported by evidence that they clearly understood him to be the person for whom the goods were intended, although there was an inaccuracy in his name as marked on the goods.

4. The plaintiffs might properly join a count in contract for non-delivery, and a count in tort for misdelivery of the goods, if in doubt which was the legal effect of the facts upon which they relied to maintain their action. Gen. Sts. c. 129, § 2, cl. 5. *Sullivan* v. *Fitzgerald*, 12 Allen, 482. *Atwater* v. *Clancy*, 107 Mass, 369.                    *Exceptions overruled.*