## JAMES W. TEAGUE *vs.* SAMUEL G. IRWIN.

Suffolk.   Jan. 9, 10. — Feb. 28, 1883.   FIELD & W. ALLEN, JJ., absent.

A count in tort for deceit in the sale of stock may be joined with a count in contract to recover back the price paid.

At the trial of an action for deceit in the sale of the stock of a corporation, the defendant called as a witness the treasurer of the corporation, who produced his cash-book, and testified that he showed it to the plaintiff before he bought his stock of the defendant.  *Held,* that it was competent for the plaintiff to cross-examine the witness as to the manner of keeping this book, and to show that it was not fairly kept, and did not contain a correct statement of the affairs of the corporation.

No exception lies to the admission of evidence to rebut immaterial evidence.

If a bill of exceptions states that the defendant introduced evidence of a conversation between the plaintiff and a third person in a certain month, and that, in reply, the plaintiff testified to a conversation with this third person in the same month and relating to the same subject matter, the defendant shows no ground of exception, although the bill of exceptions does not distinctly state that the plaintiff's testimony related to the same conversation, and it would otherwise be immaterial.

TORT, with a count in contract, both counts being alleged to be for the same cause of action.   The count in tort alleged that the plaintiff was induced to purchase of the defendant ten shares of the capital stock of the Boston, Winthrop and Point Shirley Railroad Company, by false and fraudulent representations of the defendant that the company was solvent, that the capital stock was all paid in, and that the company then had money enough in its treasury to pay all the expenses of building and equipping its road.   The count in contract was for money had and received.   Answer, a general denial.   After the former decision, reported 127 Mass. 217, the case was tried in the Superior Court, before *Aldrich,* J., who allowed a bill of exceptions, in substance as follows :

The plaintiff offered evidence tending to show that the representations set forth in the declaration were made by the defendant in the months of November and December 1876; that afterwards, on December 19, the plaintiff paid for five shares (at the rate of one hundred dollars per share), taking a certificate in his own name; and that on March 31, 1877, he paid for the other five shares, taking a certificate in the name of his wife.   He also offered evidence tending to prove that, at the

time the representations were made, the capital stock of said company was not all paid in ; that the company had not enough money in its treasury to build and equip its road; that it had substantially no money in its treasury; and that its stock had no market value, and could not be sold.

The defendant, who was examined as a witness in his own behalf, denied making any of the representations alleged, and denied that the stock was purchased of him ; and he contended, and offered evidence tending to show, that it was purchased of the company. He admitted that it was not true that the capital stock had all been paid in, and that the company had money enough to build and equip its road. But he contended that, if he represented the road to be solvent, such representation was true in every respect, and that, at the time of said alleged representations, said company was able to pay all its debts. On cross-examination, he testified that from November or December 1876, to April 1877, the road-bed was frozen, and that nothing was done towards building or completing the road, and there was no material change in the affairs of the company during that time.

The plaintiff offered evidence tending to show that, after notice to the defendant, he caused his ten shares of stock to be sold by public auction in Boston, on July 21, 1877, before this suit was brought, and that it was sold for $5 per share. This evidence was objected to, and the judge ruled that it was incompetent for the purpose of proving the value of the stock when the representations were made, and that its value in the July following was immaterial. The plaintiff then offered evidence tending to prove that, before this sale, he tendered the stock back to the defendant, and demanded the money, and again offered this evidence of the auction sale, under the second count of his declaration, claiming to recover back the money paid (less what he received for the stock) as upon a rescission of the contract. The defendant thereupon contended, and requested the judge to rule, that the count in tort for deceit, and the count in contract, based upon an alleged rescission of the contract, could not be said to be for the same cause of action, and could not stand together. The judge refused so to rule, no demurrer having been filed, and admitted the above-recited evidence of

the auction sale, under the objection and exception of the defendant.

The defendant contended, and offered evidence tending to show, that the exact pecuniary condition of the company was stated, and shown to the plaintiff, before he took any of the stock, or paid any money; and one Hills, the treasurer of the company, testified that, at one of his early interviews with the plaintiff, in November 1876, he showed him the journal or cash-book of the company, by which it appeared that at that time he had received in cash, from subscriptions to stock, about $8830, and no more, and had paid out for construction about $8815, and that there was then in the treasury a sum not exceeding $15. This book was produced by Hills at the trial, who pointed out to the judge and jury the items above referred to, which he said he showed to the plaintiff. Upon examination of this journal or cash-book, it appeared that the sum of $3300 had been paid to one Barker for ties. Upon the cross-examination of Hills, the plaintiff was allowed, against the objection and under the exception of the defendant, to show that when the company assumed this bill for ties, and agreed to pay it, (the ties having been previously purchased by some one professing to act for the company, and never having been delivered,) it was agreed that Barker should take ten shares of stock in part payment of his bill, and that he did take ten shares of stock in this way, namely, by taking ten shares which had been assigned to one Parks, and paid for by Parks. And it appeared by the journal that the $1000 paid by Parks had been charged to the treasurer, and that the $3300 was credited to him as paid to Barker. This examination was permitted, upon the ground that it tended to show that the book said to have been shown to the plaintiff did not contain a correct statement of the company's affairs. The plaintiff had previously denied that the book was shown to him at all by Hills, and Hills testified that so much of the journal as showed the footings above mentioned, and no more, was shown to the plaintiff. The judge admitted this testimony.

The defendant called one Parks, the manager of the company, who testified, against the objection of the plaintiff, that, in July 1877, he discharged the plaintiff from the employ of the

company, and informed him that he did so on account of many complaints of incompetency and failure of duty; and that the plaintiff then replied, that he knew that the defendant had been working against him since April, and had always been his enemy, but made no complaint in regard to stock transactions. He also testified as follows: "I discharged Teague some time in June 1877. I told him a great many complaints had been made; that he was a nervous man; that he had run away from his engine three times; that he had put a frog in the track wrong." On cross-examination, Parks testified: " I will not swear that, at the time I discharged Teague, he explained what I accused him of by telling me that the boiler of the engine foamed, because he had to use brackish water, and that he had to get off his engine to open a cock under the engine to let the water off."

In reply, the plaintiff testified that Parks did not discharge him, and was allowed to testify, against th^ defendant's objection, that in a conversation with Parks, in June 1877, he complained to him that he was obliged to run his engine with marsh water, because the company had not paid the city water tax; and that this water made his engine foam and work badly; and that, owing to the construction of his engine, he had to get off it in order to get at a cock to let the water off; and, that Parks admitted to him that the company had not paid the city water tax.

The jury found for the plaintiff; and stated that they assessed damages by deducting the $50 received for the stock from the $1000 paid by the plaintiff, and adding interest. The defendant alleged exceptions.

*S. B. Ives, Jr. & F. Dabney*, for the defendant.

*N. Morse*, for the plaintiff.

MORTON, C. J.  1. The defendant objected to the admissibility of the evidence of the sale by auction of the stock in question, under the second count, solely upon the ground that the two counts of the declaration were improperly joined; and asked the court to rule "that the count in tort for deceit, and the count in contract, based upon an alleged rescission of the contract, could not be said to be for the same cause of action, and could not stand together." The court rightly refused this ruling.

If a man is induced by false and fraudulent representations to buy goods of another, he may have the choice of two remedies. He may have an action of tort for the deceit, or, if he has taken the proper steps to rescind the contract, he may have an action of contract to recover back the price paid. Both these remedies proceed upon the ground of the fraud practised on him, and are not inconsistent or contradictory.

If the plaintiff is in doubt as to the legal effect of his evidence, he may, under our practice act, properly join in one action a count for the tort and a count in contract to recover the price. If there is any danger of confusion or injustice, the defendant should apply to the court, at the close of the evidence, to order the plaintiff to elect upon which count he will go to the jury, the court having the power in its discretion to make such order. Pub. Sts. *c.* 167, § 2. *Atwater* v. *Clancy,* 107 Mass. 369. *Mahon* v. *Blake,* 125 Mass. 477. *New Haven & Northampton Co.* v. *Campbell,* 128 Mass. 104.

2. The defendant introduced as a witness one Hills, the treasurer of the company, who produced his journal or cash-book, and testified that he showed it to the plaintiff before he bought his stock of the defendant. This was for the purpose of showing that the plaintiff was not deceived as to the condition of the company, as he claimed to be. It was clearly competent for the plaintiff to cross-examine Hills as to the manner of keeping this book, and to show that it was not fairly kept, and did not contain a correct statement of the affairs of the company. The cross-examination of Hills, which the defendant objected to, tended to show this, and was rightly permitted by the court.

3. The defendant called as a witness one Parks, the manager of the company, who testified that, in June 1877, he discharged the plaintiff from the employ of the company, and he detailed the conversation which then took place. In reply, the plaintiff testified that Parks did not discharge him; and was allowed, against the defendant's objection, to testify to a conversation between himself and Parks in June 1877. Even if Parks's testimony was immaterial, it was competent for the court to permit the plaintiff to give his version of the conversation to which it related. The bill of exceptions does not distinctly state that the plaintiff testified to the same conversation referred to

in Parks's testimony; but it does not show or lead to the inference that it was a different conversation, and therefore does not show that the testimony of the plaintiff was improperly admitted. *Exceptions overruled.*