JOHN DONOVAN *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    December 2, 1892. — March 7, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Competency of Entries from a Telegraphic Train Report Sheet.*

In an action against a railroad company for personal injuries, it was in dispute whether the approach of an inward train at 5.02 P. M. was hidden from the plaintiff by an outward train delivering passengers at the station where the accident occurred. The plaintiff contended that the entries from a telegraphic train report sheet kept in the defendant's train despatcher's office in Boston should not have been admitted in evidence, because they did not tend to show that no outward train was at the station at 5.02, the sheet not purporting to contain reports of all outward trains. *Held*, that the bill of exceptions did not state that this objection was stated at the trial, and that the court could not say that even in this view the entries were immaterial, as upon the plaintiff's testimony he might claim that the outward train, to the presence of which he had testified, was one which should have been reported on the sheet; so that the entries, if competent, were material in that aspect of the case, if in no other.

The plaintiff, in an action against a railroad company for personal injuries, having objected to the competency as evidence of the train sheet kept in the defendant's train despatcher's office, also excepted to testimony explaining how it was made and used, and that it was part of a system customarily employed for thirty years. *Held*, that the evidence was competent to show that the sheet was made in the ordinary course of the defendant's business, and to enable the court and jury to interpret it, and that if the plaintiff desired to have its effect limited he should have requested instructions.

As telegraphic messages are read by sound, as well as automatically recorded in symbols, entries from a telegraphic train report sheet kept in the office of a railroad train despatcher stand upon the same footing as if made from oral statements uttered at the indicated station and audible in the despatcher's office, or

in view of the symbols in which the manipulation of his instrument by the operator who sends the message makes it visible at the receiving station, the entries are as if made from his signals given at the place of sending and visible in the despatcher's office. They are not, therefore, governed by the rule applied in the case of book charges for goods delivered by a servant whose entries or marks are transferred to his master's account-book.

Where there is no reasonable possibility that any designed untruth had part in placing upon the train sheet kept in the train despatcher's office of a railroad the statements of which it is the vehicle, and all known circumstances concerning it favor its accuracy, and it is sufficiently identified as genuine, it is competent evidence as an act rather than a declaration without the production or proof of the death of the operator who sent the messages; and its entries material to the issue are admissible and proper for the jury, notwithstanding the fact that it was made by the servants of the party by whom it was offered.

When entries from a telegraphic train sheet kept in the train despatcher's office of a railroad were read at the trial of an action against the railroad, the sheet itself was not put in, and the plaintiff made no request, either then or afterwards, that it should go to the jury, but merely objected to the withdrawal of certain entries. *Held,* that this was only an exception to the withdrawal by the court of testimony once admitted, which withdrawal was within the discretion of the presiding justice. *Held, also,* that in any event it was not shown that the plaintiff was harmed, as there was no presumption that one part of such a document contradicts another, and it was nowhere made to appear that the entries withdrawn or the whole sheet tended in any way to discredit the entries admitted.

Tort, under Pub. Sts. c. 112, § 213, for personal injuries occasioned to the plaintiff by being struck by a locomotive engine at East Somerville, at the Perkins Street crossing of the defendant's railroad.

At the trial in the Superior Court, before *Bishop,* J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*G. A. O. Ernst,* (*W. H. Baker* with him,) for the plaintiff.

*W. I. Badger,* for the defendant.

Barker, J. The questions for decision arise from the admission, as evidence for the defendant, of entries from a telegraphic train report sheet kept in its train despatcher's office in Boston. It was in dispute whether the approach of an inward train at 5.02 P. M. was hidden from the plaintiff by an outward train delivering passengers at the East Somerville station, in the vicinity of which the accident occurred. Witnesses for the defendant testified that there was no such outward train; that one passed without stopping at 4.52, and that no other passed or stopped until 5.12; and entries from the train sheet, with the testimony of the person who made them, were admitted to

show that outward trains passed at 4.10, 4.13, 4.21, 4.37, 4.52, 5.12, 5.13, and 5.33 ·P. M.

1. The plaintiff now contends that the entries should have been excluded, because they did not tend to show that no outward train was at the station at 5.02, the sheet not purporting to contain reports of all outward trains; but the bill of exceptions does not show that this ground of objection was stated at the trial, and from all that appears we cannot say that even in this view the entries were immaterial. Upon the plaintiff's testimony, he might claim to the jury that the outward train, to the presence of which he had testified, was one which should have been reported on the sheet; so that the entries, if competent, were material in that aspect of the case, if in no other.

2. The plaintiff, having objected to the competency of the train sheet, also excepted to the admission of testimony explaining how it was made and used, and that it was part of a system customarily used by the defendant for thirty years. Such evidence was competent to show that the sheet was made in the ordinary course of the defendant's business, and to enable the court and jury to interpret its statements. If the plaintiff desired to have its effect limited, he should have requested such instructions.

3. Some statement of details is necessary in discussing the competency of the entries. The sheet was a form or blank, ruled in columns and cross lines. Each train to be reported had a column designated by its train number, and the names of the stations were in order upon the cross lines. When the sheet was in use, figures were from time to time entered upon it by a person whose duty it was to enter them, and who was the witness producing it. Figures so entered indicated that the train to which that column was assigned left the station specified at the hour and minute denoted by the figures. The sheet was kept under the eye of ·the train despatcher in his office in the Boston station. When a train left that station the time of departure was entered; when a train left or passed any other station where there was a telegraph, an operator in that station immediately telegraphed to the despatcher's office a statement of the time when the train passed, and also entered the time on a sheet in his own office. The messages so sent to the de-

spatcher's office were there received from a telegraphic instrument by a telegrapher, who at once made the entries upon the sheet. The sheet thus showed to the despatcher between what stations each designated train was at each moment, and he controlled the movements of trains, using this information; but the person who made the entries had no personal observation of the train, and the truth of the entries rested upon the statements of the operators at the stations. The telegrapher who received the messages and entered them upon the train sheet in the despatcher's office was produced as a witness. The sheet of entries made by the operator at the East Somerville station was also produced and identified, but the East Somerville operator was no longer in the defendant's employment, and was not produced; his handwriting was not proved, and it was shown that his whereabouts was unknown; and upon the plaintiff's objection the East Somerville sheet was excluded. Under the plaintiff's exception to the ruling that the despatcher's sheet was competent evidence, entries from it were then read to the jury, showing the times when trains passed East Somerville.

The failure to produce the East Somerville operator is relied upon by the plaintiff as one ground for his contention that the entries were not shown to be competent evidence. Upon this point he cites the cases of *Kent* v. *Garvin*, 1 Gray, 148, and of *Miller* v. *Shay*, 145 Mass. 162, which held that book charges for goods delivered by a servant whose entries or marks are transferred to his master's account-book are inadmissible, unless the servant is called to support the charges and prove the delivery. But no entries were transferred to the despatcher's sheet from the sheet kept at the East Somerville station. As telegraphic messages are read by sound, as well as automatically recorded in symbols, these entries stand upon the same footing as if made from oral statements uttered at the indicated station, and audible in the despatcher's office; or, in view of the symbols in which the manipulation of his instrument by the operator who sends the message makes it visible at the receiving station, the entries are as if made from his signals given at East Somerville and visible in the despatcher's office. These entries are not, therefore, governed by the rule applied in the cases on which the plaintiff relies.

4. The principal question is whether the train sheet, with the testimony of the witness who made the entries upon it, was competent evidence for the defendant. It is clear that the sheet was worse than useless if its statements, as seen by the despatcher, were not accurate. Every interest of the defendant demanded that an entry when made should be true, and no reason can be conceived why the defendant should procure or permit a false or incorrect entry to be placed under the eye of the official who controlled the movement of its trains; nor is there any reason to presume that the operator who observed the passing of the trains at a station, and telegraphed the information to the despatcher's office, or the person who there received the messages and made the entries on the sheet, had any interest to misstate the facts or to make false entries. The system was the established course of the defendant's business, so that the sheet was not an accidental memorandum; and every step by which the information spread upon it was gathered, transmitted, and entered was an act performed by some person in the line of his duty and in the usual course of his employment, under a sanction tending to make his statements true; and these acts were so connected with and dependent upon each other as to form parts of one transaction. If the sheet had been used and kept in the course of business by a third person, and not by the party by whom it was offered, there is authority in the decisions of this court for its competency. In *Briggs* v. *Rafferty*, 14 Gray, 525, after evidence that the plaintiff's clerk had marked packages of goods and sent them to be carried by rail to the defendant's place of residence, a servant of the railway corporation produced its regular freight business books, kept by himself, and testified that while he had no personal recollection of the facts, he had no doubt the entries in them were correct, and that the transactions therein recorded took place, and the evidence was held competent to prove the delivery of the goods at their place of destination. As the corporation received the goods in Boston and delivered them in Lawrence, and no other witnesses than the bookkeeper appeared in support of the entries, and as it is apparent that they could not have all been made upon the personal knowledge of the bookkeeper, the evidence was held competent upon no better

footing than the train sheet in the present case, except that the latter was made by a servant of the party in whose favor it was offered, and is thus evidence which it has made for itself.   In *Adams* v. *Coulliard*, 102 Mass. 167, 173, entries from railway freight-books were held to have properly been read to the jury, although it does not appear that the persons who made out the waybills, from which some of the entries were made, were called as witnesses, the court saying that " inferences of fact are always to be legitimately drawn from the known course of business." In these two cases the entries were declarations which tended directly to support the right of the carrier to claim compensation for a service, and one purpose of making them was to preserve evidence in support of a claim.   In *Townsend* v. *Pepperell*, 99 Mass. 40, 43, 46, the account of the medical history of the case of a patient in the Massachusetts General Hospital was held competent evidence, when produced by the superintending physician, although he testified that he did not know by whom the entries were made, and that the book in which the account was entered was one of a series in his custody, in which, in the regular course of the business of the hospital, it was the duty of the physicians to enter the history of the cases under their charge ; and in *Costello* v. *Crowell*, 133 Mass. 352, 355, a book entry, identified by the testimony of the bookkeeper who made it, was held competent to prove a date, although it does not appear that the fact stated in the entry was within his personal knowledge, and no other witness was called in support of it. In our opinion, because there is no reasonable possibility that any designed untruth had part in placing upon the train sheet the statements of which it is the vehicle, and all known circumstances concerning it favor its accuracy, and because it was an act rather than a declaration, and was sufficiently identified as genuine, it was competent evidence without the production or proof of the death of the operator who sent the messages ; and its entries material to the issue were admissible and proper for the jury to consider, notwithstanding the fact that it was made by the servants of the party by whom it was offered.

Entries possibly similar, offered by the corporation by whose servants they were made, were held inadmissible in *Pittsburgh, Cincinnati, & St. Louis Railroad* v. *Noel*, 77 Ind. 110, 121, because,

in the opinion of the court, neither *res gestæ* nor public records, but private entries in the private books of the company, made by its agents in the course of its business. But in the present case the train sheet, with its entries and the messages from which they were made, were acts rather than mere declarations, and acts done before any controversy had arisen, when all concerned had no interest except to know and to state the truth.

5. After the court, under the plaintiff's exception, had ruled that the train sheet was competent evidence, and the entries showing when the trains passed East Somerville had been read to the jury, those which stated when the same trains left Boston were also read. The plaintiff made no request when the entries were read that the sheet itself should be put into the case. All the entries read were put in during the direct examination of the witness who made them; and his testimony, up to that point, tended to show that he entered the departure of trains from Boston from his own observation. His cross-examination disclosed that the entries of the departures of trains from Boston were copied by him from a book in which they were made by train conductors just before the departure of the trains. In view of this, the court then directed the jury to disregard that part of the testimony which related to the time when trains left Boston, and stated that the part relating to the time when the trains went through Somerville might remain. Counsel for the plaintiff then said, " It seems to me that, if any portion goes in, we are entitled to the whole of it." The presiding justice replied, " I do not think so." To this remark the plaintiff's counsel excepted, adding, " It excludes from us now an opportunity to argue to the jury that his reports coming from Somerville are inaccurate." Further conversation followed as to the fairness of withdrawing testimony once introduced, at the end of which the court ruled that the part of the evidence as to the time of leaving Boston should be disregarded by the jury, and that the other part should stand, subject to the plaintiff's exception; and to this ruling, as we construe the bill of exceptions, it was understood by all that the plaintiff should be considered as excepting, as it was made in reply to a statement of his counsel that he wished to save his rights. All this happened while the defendant was putting in his evidence, and during the exam-

ination of the witness who was called with the train sheet. The plaintiff now contends that if any part of the sheet was admissible the whole should have gone to the jury, and that the court declined to permit its use to test the accuracy of the entries which remained in the case. The party against whom books are put in evidence may, of course, subject them to scrutiny, or show that they were not fairly kept. *Gardner* v. *Way*, 8 Gray, 189. *Teague* v. *Irwin*, 134 Mass. 303, 307. But the bill of exceptions does not show that the plaintiff laid the foundation for the application of this rule. When entries from the train sheet were read, the sheet itself was not put in, and the plaintiff made no request, either then or afterwards, that it should go to the jury. All that he said upon the subject was in objection to the withdrawal of certain entries. This was merely an exception to the withdrawal by the court of testimony once admitted under an objection taken by the excepting party, and such a withdrawal is within the discretion of the presiding justice, and is not a matter of exception.

But, assuming that it can be inferred from the bill of exceptions that it is now open to the plaintiff to complain that he was not allowed to use the whole sheet to test the accuracy of the entries which remained for the consideration of the jury, his exception cannot be sustained. It is not shown that he was harmed. There is no presumption that one part of such a document contradicts another part, and it is nowhere made to appear to us that the entries withdrawn or the whole sheet tended in any way to discredit the entries which were admitted.

*Exceptions overruled.*