A. J. TYLER v. THE CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

**Evidence:** VALUE OF GRASS. In an action against a railroad for
1   damages for negligently destroying grass land by fire, statements
of witnesses that the grass land in question was the best in the
county, and tending to show the value of the grass in question,
were admissible, though some of them were based on knowledge of
similar pastures instead of actual knowledge of the grass
destroyed. Though this testimony was, in some respects, objec-
tionable, it was not prejudical.

SETTING FIRE. The evidence of a witness as to fires other than that
2   in question, but seen near the railway soon after the engine
which is claimed to have set the fire in question had passed, and
that he went to them at once, but did not see any person or thing
which could have caused the fire, except the engine, is admissible.

**Appeal:** HARMLESS ERROR. The exclusion of the entries in the
4   inspection book in which the condition of railroad locomotives on
5   the days of inspection are noted is not prejudicial in an action
involving the condition of an engine, where the witness who made
them testified positively to the facts in regard to the condition of
the engine, which the entries show.

ESTOPPEL BY CONDUCT. Defendant cannot complain of testimony
3   elicited upon cross-examination of its witness in response to ques-
tions put to him in consequence of questions equally objection-
able, asked by the defendant; especially when it is not prejudical.

*Appeal from Tama District Court.*—HON. G. W. BURN-
HAM, Judge.

MONDAY, MAY 31, 1897.

ACTION at law to recover for damages from fires
alleged to have been caused by negligence on the part
of the defendant. There was a trial by jury, and a ver-
dict and judgment for the plaintiff. The defendant
appeals.—*Affirmed.*

*Hubbard & Dawley* for appellant.

*Struble & Stiger* for appellee.

ROBINSON, J. — In July, 1894, the defendant ope-
rated a railway through a farm in Tama county which
was owned by the plaintiff. On the sixteenth day of
that month, and again on the twenty-sixth, fires burned
over portions of the farm, and injured blue grass and
timothy which were growing thereon, and burned part
of a fence. The fires started on or near the defendant's
right of way, and the plaintiff claims that they were
started by locomotive engines of the defendant; that
the engines were out of repair, were not supplied with
the best-known appliances to prevent the escape of
sparks, and were not operated with reasonable care.
The answer denies negligence, and avers due care on the
part of the defendant.

I. A witness named Fife testified that he was on
the plaintiff's grass land July 18; that its condition
was good, excepting along the creek, and he thought
that from that time it was worth one dollar per acre
per month. He also stated that the season was very
dry, and that he saw other pastures in that local-
ity about the same time. He was then permit-
ted to state, notwithstanding objections of the
defendant, that the plaintiff's pasture was better than
any he had seen in that locality, or any other in the
year 1894. Amos Brooks, after showing an experience
of ten years in farming, stated that he had seen the land
in question, but not in the year 1894, and that he had
farms in the same locality. He was then asked to state
"what grass land, best timothy and blue grass, was
worth per acre last year (1894),—good fair pasture
land." He answered, over the objection of the defend-
ant, that "it would be worth a dollar per month per
acre just for the grazing season, not including the winter,

months. I have seen the land in question. It is the best grass land we have in the county." The statement of Fife as to what pastures he had seen was rather indefinite, and the estimate of Brooks as to value was evidently not based upon actual knowledge of the grass which was destroyed, but upon his knowledge of pastures of a similar character. The testimony of the two witnesses together tended to show the value of the grass in question, and, although it was in some respects objectionable, the defendant was not prejudiced by it.

II. The appellant claims that the court erred in permitting one Howdyshell to testify in regard to fires other than those in question claimed to have been set by an engine of the defendants, and claims that there was not sufficient testimony on that point to justify its submission to the jury. The witness testified to having seen fires near the defendant's railway track soon after the engine which is claimed to have set the fires in question passed; that one of the fires he saw was in his own meadow, and that he went to it at once, but did not see any person or thing which could have caused the fire, excepting the engine of the defendant. We think there was sufficient evidence on that point to authorize its submission to the jury.

III. W. T. Haynes, a resident of Tama county, and a farmer, testified for the defendant that the latter part of August, 1894, he placed cattle in a pasture near that in question; that they were in fair condition at that time; and that there was no grass when he took them out. He was asked in regard to their condition when he took them out, but objections to the question and answer were sustained. The condition of the cattle at that time was wholly immaterial, and the answers sought were properly rejected. The witness named was asked by the plaintiff on cross-examination the following: "If the grass upon this ground was of that character and quality that it would make a blaze

that would travel so fast that a person trying to keep
up with it would tire out in his attempt to put it out,
then what would you say as to the value of the grass?"
An objection of the defendant was overruled, and the
witness answered, "My opinion would be that it would
be worth fifty cents per acre." The witness, on direct
examination, had testified on the supposition that the
plaintiff's pasture contained two hundred and sixty-one
acres; that one hundred head of cattle were pastured in
it during the summer; that one hundred and sixty acres
of it were burned over about July 26, and the dry
grass then burned; and that it would not have been
worth more than fifty cents per month more during the
remainder of the season if it had not been burned than
it was after it was burned. He had also testified: "If,
on July 26 this pasture had been very short and
entirely dry, not more than an inch or two high, and
that when it was set on fire it turned a blaze two or
three inches high and run over the ground, that they
could follow right along in the rear of the fire, and put it
out with shovels, without getting burned, or anything
of that kind; if it was seed pasture as here described, I
would not give to exceed fifty cents per acre for it."
After the witness had testified on cross-examination as
stated, he further testified from personal observation
that the value of the land would not have been more
than fifty cents per acre for the remainder of the season.
The question asked on cross examination which we have
set out was indefinite, uncertain, and not justified by
any issue in the case, but it seems to have been put to
the witness in consequence of questions equally objec-
tionable, asked by the defendant, and, in view of other
testimony which the witness gave, his answer to that
question could not have prejudiced the defendant.

IV.  A witness named Lavalley testified that he
was stack inspector of the defendant at Boone when
the last fire in question occurred; that his duties were

to inspect the ash pans, dampers, front ends, nettings, and stacks of the defendant's locomotive engines; that all engines brought into the house were inspected before they went out, and that the date of each inspection and the condition of the engine inspected, whether in good or bad order, were recorded in the inspection book; that he had the book for July, 1894; that it showed inspections made by himself on the twenty-second and twenty-fifth, and one made by a man named House on the twenty-seventh, of engine No. 712, which is alleged to have set the fire on the twenty-sixth; and that the witness inspected the netting on the twenty-fifth; and that at that time it was in good condition. He was then asked the meaning of the words, "Netting good, stack good, ash pan good," written opposite his name on the twenty-fifth; but an objection of the plaintiff to the question was sustained. The witness testified quite fully in regard to the method of inspecting engines, the life of a netting, and the means by which it was repaired. He also stated that he had inspected the engine in question on the first and third days of August, and found it to be in good condition, and that he made a record of the inspections thus made. He stated further that he had no personal recollection of the inspections, but testified as to them from the entries made in the inspection book, and that the entries were true. House did not testify. The defendant offered in evidence so much of the inspection book as showed the inspection of engine No. 712 on the twenty-second and twenty-fifth days of July, but an objection made thereto by the plaintiff was sustained. An objection to so much of the book as showed the inspection of the engine on the first and third days of August was also sustained. The appellant complains of these rulings.

Records of a character somewhat similar to those in question are sometimes admissible in evidence. Thus, in *Donovan v. Railroad Co.*, 158 Mass. 450 (33 N. E. Rep.

584), a train sheet prepared by employes of the defend-
ant, which showed the movement of its trains, was held
competent evidence in its behalf, on the ground that
there was no reasonable possibility that it was inten-
tionally made incorrect; that all known circumstances
concerning it favored its accuracy; that the sheet was
not an accidental memorandum; that it was made by
persons acting in the line of their duty, and in the
usual course of employment, under conditions which
tended to make the entries correct; that the train sheet,
the entries, and the messages from which they were
made, were acts rather than declarations, done before
any controversy had arisen, when all concerned had no
interest except to know and state the truth. In *State
v. Brady*, 100 Iowa, 191, we held that the records
of ticket offices showing the daily sales of railway
tickets was admissible in evidence on the trial
of a person who was accused of cheating by false pre-
tenses in pretending to have paid charges on account of
poor persons, including the purchase for them of rail-
way tickets, which he did not in fact pay. The records
thus held to be admissible against the defendant were
made by a ticket agent in the ordinary course of busi-
ness, under conditions and circumstances which tended
to preclude error, and to secure entire accuracy of state-
ment. Neither the railway company nor its agent had
any interest in the prosecution by the state, and there
was nothing in the case to cast any doubt upon the cor-
rectness of the reports. In *Huston v. City of Council
Bluffs*, 101 Iowa, 33, we held that a record of the United
States weather bureau was admissible in evidence, for
the reason that it was official, made by a proper person,
in the discharge of a duty imposed upon him by law.
We held in *Taylor v. Railway Co.*, 80 Iowa, 435, that a
record of the inspection of engines like that in question
was not competent evidence. Some of the members of

this court, as it is now constituted, are not fully convinced of the correctness of that holding. Therefore we neither approve nor disprove it, but base our conclusions upon the ground that the witness Lavalley testified positively to the facts which the entries he had made showed, and the defendant could not have been prejudiced by the exclusion of the entries, if it be true that they were admissible. Nor was it important, for the same reason, to show the meaning of the words used in the entries. That was necessarily included in the testimony which the witness gave.

V. The appellant complains of the refusal of the court to give certain instructions asked, and criticises portions of the charge given. Some of the instructions refused assumed to be true, claims which were in dispute, and others were immaterial. The charge given to the jury fairly submitted the issues involved in the case, and the evidence justified the verdict. The judgment of the district court is AFFIRMED.