JULIAN O. MASON *vs.* MARCUS MASSA.

Suffolk. March 8. — May 4, 1877. ENDICOTT & SOULE, JJ., absent.

In an action against a broker to recover back money paid him for a note, evidence of his declaration to a third person that he had bought the note himself is admissible on the issue whether he sold the note as his own or as an agent, disclosing his principal.

A bill of exceptions filed by the defendant stated that the jury were directed to retire on Friday afternoon to find their verdict, and that the court took a recess until the next morning; that the jury separated late in the evening, and on the Monday following returned a sealed verdict for the plaintiff, which stated no damages, and that they were directed, in the absence of the defendant, to retire and find a verdict for the plaintiff for a certain amount. *Held,* there being no dispute about the amount, if the defendant was liable at all, that the defendant had no ground of exception.

CONTRACT against a broker to recover back money paid to him for a note of $650, purporting to be signed by E. J. Brown, payable to the order of, and indorsed by, H. Mauthe.

At the trial in the Superior Court, before *Brigham,* C. J., it appeared that the signature of Brown was a forgery, and that the defendant was a note broker and well known to be such by the plaintiff. The defendant testified that he received the note from Mauthe with instructions to sell it, and a promise of a commission if such sale was effected; that Mauthe gave him a

statement in writing of the consideration of the note, how and for what he received it, also of the means and residences of Mauthe and Brown ; that he gave the note and statement to the plaintiff who retained them from May 31, 1875, to June 3, 1875, for the purpose of making inquiries as to Brown and his responsibility; that he informed the plaintiff that he was selling the note as a broker for Mauthe and was to receive a commission; that on June 2, 1875, the plaintiff bought the note and gave the defendant a check payable to bearer for $650, dated June 5, 1875; and that the defendant got the check cashed for a small discount on the same day, and gave the proceeds to Mauthe and took a receipt for the same. There was other evidence tending to show that the plaintiff knew, or had reasonable cause to know, the agency of the defendant, and the name of his principal before he bought the note.

The plaintiff testified that he did not know that the defendant was acting as a broker for Mauthe ; that he supposed that the defendant owned the note, although the defendant did not say so ; and that the defendant said he knew the note was good.

The defendant also offered evidence tending to show that he had had many transactions in notes with the plaintiff previously, and that the plaintiff well knew that he had acted as broker in all of them.

Brown, being called by the plaintiff, testified that the defendant stated on June 3, 1875, that he had bought the day before one of his (Brown's) notes. The plaintiff called also one Baldwin as a witness, and offered to show that the defendant had exhibited to him, the latter part of May, 1875, a note of Brown's, and had offered to sell it to him, saying at the time, " The note is so good I buys it myself." The plaintiff did not offer to show that he had been informed of this conversation before he bought the forged note, and there was no evidence tending to show such information or knowledge. The defendant objected to the evidence, but the judge admitted it; and the defendant excepted.

The jury received instructions, which were not excepted to, as follows: " The question of this case is, from whom did the plaintiff understand that he was buying the note, from the defendant, or from Mauthe ; the transaction of buying the note was with the defendant, and to relieve him from liability there

must have occurred such a state of facts that the plaintiff under-stood, or ought to have understood, as a man of ordinary intelligence, that he was dealing with Mauthe through the defendant acting as his agent. If the defendant sold the note to the plaintiff, not disclosing the name of Mauthe, and if the plaintiff did not know by such disclosure, or from any other such means, that the defendant was acting as agent or broker for Mauthe, whether anything was or was not said by the defendant as to the genuineness of Brown's signature on the note, the defendant would be liable. But if, at the time, the defendant was a note broker, and did disclose to the plaintiff, in the transaction of selling the note, the name of Mauthe as his principal, or if the plaintiff from some other cause then knew that the defendant was acting for Mauthe, the defendant would not be liable whether he made or did not make any statement on the subject of the genuineness of Brown's signature on the note.

" The burden of proof is upon the plaintiff to prove that he dealt with the defendant under such circumstances as to render him liable as warrantor of the signature of Brown on the note. The plaintiff must prove this proposition by a preponderance of evidence against all the evidence which tends to show that Mauthe was the real party instead of the defendant. If the plaintiff's evidence proves a contract negotiated with the defendant, apparently on his own behalf, and nothing to the contrary appears, that is sufficient and would satisfy the burden of proof on 'he plaintiff, and put upon the defendant the burden of proving the disclosure of Mauthe, as his principal in the transaction."

The jury, in the afternoon of Friday, were directed to retire to find their verdict. The judge then took a recess until the next morning. The jury separated late in the evening, and on the Monday following, returning into court, brought in a sealed verdict, which being opened was found to state that the jury found for the plaintiff, but stated no sum or amount as damages. The judge thereupon directed them to retire and to find a verdict for the plaintiff for the sum of $650 and interest from the date of the writ. The jury retired and then brought in a verdict for the plaintiff for the sum of $656.77. Neither the defendant or his counsel was present during any part of these proceedings. The defendant alleged exceptions.

*J. L. Eldridge*, for the defendant.

*S. J. Thomas*, for the plaintiff.

AMES J. We see nothing open to exception in the instructions given by the presiding judge. There was a conflict of evidence upon the question whether the defendant sold the note apparently as his own, and on his own account, to the plaintiff ; or whether, on the other hand, the plaintiff, in buying the note, understood, or as a man of reasonable intelligence ought to have understood, that he was dealing with the defendant as the agent of another person. The evidence that the defendant had declared to a third person that he had bought the note himself was competent as an admission of his ownership. The question was submitted to the jury with instructions of which the defendant certainly had no cause to complain. The only doubt we can have is whether they were not more favorable to him than he had any right to ask. See *Merriam* v. *Wolcott*, 3 Allen, 258, and the cases there cited.

There was no irregularity in regard to the verdict, which makes it necessary or proper to set it aside. It is a well settled and long established practice that a jury, when they have returned a finding that is incomplete and defective, may be sent out again in order to correct the error, even though they had separated after their first finding before they came into court. *Pritchard* v. *Hennessey*, 1 Gray, 294. *Commonwealth* v. *Carrington*, 116 Mass. 37. After a general finding for the plaintiff without an assessment of damages, they may be sent out again for the purpose of making such assessment. And this may be done although there may have been an adjournment of the court in the mean time. *Chapman* v. *Coffin*, 14 Gray, 454. *Winslow* v. *Draper*, 8 Pick. 170, *Lawrence* v. *Stearns*, 11 Pick. 501. In this case, there was no question that the plaintiff, if entitled to recover at all, must recover the amount of the note and interest. The correction of the verdict therefore was not a change in substance, but a mere arithmetical computation. The separation must be with the express or implied permission of the court, after the finding had been agreed upon and sealed up. It does not appear from the bill of exceptions that those elements were wanting in this case, and we cannot presume in favor of an excepting party that they were wanting. If, as we understand to have been conceded

at the hearing, the jury separated at a late hour on Friday night and came into court on Monday morning, that being the next jury day of the term, there has been no irregularity requiring that the verdict be set aside.       *Exceptions overruled.*