PRODUCE EXCHANGE TRUST COMPANY *vs.* GEORGE BIEBERBACH & others.

SAME *vs.* WORCESTER BREWING COMPANY.

SAME *vs.* GEORGE BIEBERBACH & others.

Worcester. November 22, 1899. — October 17, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Promissory Note — Evidence — Corporation — Fraud — Trial — Verdict — Exceptions.*

Evidence tending to show a want of consideration for a promissory note, unaccompanied by evidence that the plaintiff did not take the note for value, in good faith, before maturity, is no defence to an action on the note.

In actions tried together against the maker and the indorsers of promissory notes made by a corporation, a note book containing entries of the making of other notes similarly signed and of the notes in suit, and of the payment of the other notes but not of the notes in suit, (the book and paid notes having been turned over to a receiver of the corporation with its effects,) and the notes so paid are rightly admitted in evidence as competent against the corporation, no request having been made that the effect of the evidence should be limited to the corporation. A request that the notes be not admitted as standards of handwriting is too broad, and a request that the purpose for which they are received be restricted is too indefinite.

In actions tried together against the maker and the indorsers of several promissory notes, there being abundant evidence as against most of the defendants of the genuineness of the notes, the notes are rightly admitted in evidence.

A by-law of a corporation authorizing promissory notes to be signed in a certain manner is rightly excluded in an action upon a note made by the corporation, no evidence being offered tending to show actual knowledge of such by-law by the plaintiff, who relies wholly upon proof that the corporation has recognized and paid notes signed like that in suit.

In this case, which consisted of three actions tried together upon promissory notes contended to have been received by the plaintiff from the bank which discounted them before maturity, the bill of exceptions does not show that the conversations between a witness for the defendants and the cashier of the bank, stated therein as conversations tending to show a fraudulent issuance of the notes and knowledge of such fraud by the cashier, were excluded wrongly.

Entries in the books of a bank which has discounted certain promissory notes, and the testimony of the clerks who kept the books as to facts within their personal knowledge, showing that the discounts went to the credit of the maker of the notes or his agent, whose evidence is thus in part contradicted, are competent and rightly admitted in an action upon the notes.

That A. represented the bank which discounted certain promissory notes made by a brewing company in erecting the brewery, that the notes were first sent to him and by him delivered to the bank, that the proceeds of one of the notes were credited to his account as agent, that the bank allowed him to overdraw that account, and that the notes were replaced in his hands for a day for some undisclosed purpose after they had become the property of the bank, do not justify a finding, in actions against the maker and the indorsers of the notes, that there was any fraud upon any of the defendants, either in issuing the notes or in dealing with their proceeds; nor does the fact that the notes were handed back to A. by the cashier of the bank for a day long after the time when they had been discounted have any tendency to show that the latter was a discounting officer.

If a promissory note issued by the officers of a corporation is signed by them, and is also indorsed by them and by others, with the intention that it shall be the note of the corporation, but the name of the corporation is accidentally omitted from the face of the note, such omission may be supplied by the insertion of its name without affecting the validity of the note; and the facts that the note was in the note book of the corporation and that it was similar to many other paid notes of the corporation, with the single exception of the omitted name, are ample evidence that the omission of the name was an accident.

A promissory note made upon a blank form, signed by " A. secretary " and " B. president," payable " to the order of ourselves," and indorsed " W. Brewing Company, B. president, A. secretary," filled out and the name of the corporation indorsed in the handwriting of A., is the note of the corporation.

The rights of the maker or of a prior indorser of a promissory note are not affected by the forgery of the name of a subsequent indorser.

Evidence of the payment by a corporation of many similar promissory notes executed and issued by the same officers and entered upon the same note book with the notes in suit disposes of the contention that there was a failure to prove the authorized issue of the latter notes by the corporation or their execution by its officers thereto authorized.

A request for a ruling based upon a fact of which there is no evidence is rightly refused.

In an action on a promissory note made by a corporation, a request for a ruling

directed to the contention that the note was not issued in accordance with the by-laws of the corporation is refused properly, if the evidence justifies a finding that notes issued like that in suit were duly issued as the notes of the corporation.

In this case, which consisted of three actions against the maker and the indorsers of certain promissory notes, the proceedings of the judge in taking the verdicts and ordering them to be recorded were proper.

No exception lies to the refusal to give particular instructions to the jury upon retiring to amend their written verdict so as to conform to the finding which they have reported.

THREE ACTIONS OF CONTRACT upon promissory notes, tried together in the Superior Court, before *Hopkins*, J.

The jury returned a verdict for the plaintiff in each case ; and the defendants alleged exceptions, which appear in the opinion.

The case was submitted on briefs to all the justices.

*J. R. Thayer & A. P. Rugg,* (*H. H. Thayer* with them,) for Bieberbach and other defendants.

*R. B. Dodge, Jr. & W. J. Taft,* for the defendant Gibbs.

*F. W. Blackmer & E. H. Vaughan,* for Herrick, the receiver.

*W. S. B. Hopkins & F. B. Smith,* (*F. R. Dresser* with them,) for the plaintiff.

BARKER, J. Of these three actions, that against the Worcester Brewing Company was to recover from it as the maker of three promissory notes, each for the sum of $5,000, upon four months time, two of which were dated March 1, 1898, and the third, March 14, 1898. The first suit was against George Bieberbach, Abraham G. Reimold, George M. Gibbs, and Paul Henry, as indorsers of the note dated March 14, 1898. The third suit was against George Bieberbach, Abraham G. Reimold, and George M. Gibbs, as indorsers of the two notes of March 1, 1898.

The actions were tried together, the receiver of the property of the Worcester Brewing Company participating in the defence.

In the first action a verdict was rendered for the defendant Paul Henry, and also a verdict for the plaintiff against the defendants George Bieberbach, Abraham G. Reimold, and George M. Gibbs, for the sum of $5,348.22, the amount due on the note of March 14, 1898.

In the second action a verdict was rendered against the Worcester Brewing Company for $16,059.17, the amount due on the three notes.

In the third action a verdict was rendered against George Bieberbach, Abraham G. Reimold, and George M. Gibbs, for $10,713.34, the amount due upon the two notes of March 1, 1898.

The bill of exceptions upon which the case comes here was filed and is prosecuted by all the defendants in the three actions, except Paul Henry.

1. The first and second exceptions stated on the bill were to evidence admitted in proof of signatures upon the notes in suit. These exceptions have not been argued by the defendants, and we treat them as waived.

2. The third, fourth, fifth, and sixth exceptions were to the exclusion of the testimony of the receiver that none of the books of the company in his hands showed any entry or account of any money or benefit received from any of the notes in suit, the questions asked of the receiver and excluded being as to the cash book and other books of the company which had been placed in his hands by the officers of the company upon his appointment. The receiver was called as a witness by the plaintiff. He had before him in court the books to which the questions referred, and the questions excluded were asked him upon cross-examination by the defendants.

This evidence tended to show nothing more than a want of consideration, and this, unaccompanied by evidence that the plaintiff did not take the notes for value, in good faith, before maturity, is no defence. *Holden* v. *Phœnix Rattan Co.* 168 Mass. 570. There was no offer to show that the plaintiff did not take the notes in good faith for value, without notice and before maturity. As the cases stood, proof of want of consideration would have been no defence, and the defendants were not harmed by the exclusion of evidence tending to make such proof, even if the evidence excluded was relevant to an issue raised by the allegations of the answers. Under the circumstances the issue was immaterial and the evidence could be excluded properly.

3. Among the effects of the company turned over to the receiver by the officers were forty-nine paid notes made and paid by it, and a note book upon which those notes and the notes in suit were entered. The note book and notes were

admitted in. evidence, and the seventh, eighth, and ninth exceptions relate to their admission. The note book contained entries of the making of each of the forty-nine notes and of the three notes in suit. It also contained entries of the payment of the forty-nine notes and no entry of the payment of the three. Many of the forty-nine notes were signed by the president and secretary in a way similar to that in which the notes in suit were signed, thus tending to show that it was within the duty of those officers to sign notes for the corporation. In some instances the signature of the company was made by the use of a rubber stamp, in others it was typewritten, and in others it was in the handwriting of the secretary, and in these respects the notes admitted were similar to those in suit. All this evidence was admitted rightly because it was competent as against the defendant company.

While the defendants when objecting to the admission of the evidence asked that the forty-nine notes should not be admitted as a standard of handwriting, and that the purpose for which they were to be received should be restricted, no request was made that either the book or the notes should be admitted only as against the defendant company. As against it the book and notes were its admissions and competent for all purposes. The exceptions to the admission of this evidence were, therefore, not well taken. No request was made that its effect should be limited to the defendant company. The request that the notes be not admitted as standards of handwriting was too broad, as they were competent for all purposes as against one defendant, and the general request that the purpose for which they were received be restricted, was too indefinite. See *Earle* v. *Earle,* 11 Allen, 1 ; *Howe* v. *Ray,* 113 Mass. 88 ; *Packer* v. *Lockman,* 115 Mass. 72 ; *Potter* v. *Baldwin,* 133 Mass. 427.

4. The tenth exception was to the admission in evidence of the three notes in suit. This exception has not been argued. There was abundant evidence as against most of the defendants of the genuineness of the notes and they were admitted rightly.

5. The eleventh exception was to the exclusion of evidence of the by-laws of the company, requiring " checks or other instruments for the payment of money " to be signed by the president and countersigned by the treasurer. No evidence was offered

tending to show that the plaintiff had actual knowledge of the by-laws. As the maker of the note was a corporation, its by-laws would have been competent in favor of the plaintiff to show that the notes were signed by persons having due authority from the corporation. But the plaintiff had not introduced them for that or for any purpose, and relied wholly upon the proof that the corporation had recognized and paid such notes made and signed like those in suit. While the by-laws gave authority to certain officers, the corporation could also confer the power to issue its notes in other ways. As the plaintiff relied wholly upon the fact that the corporation had been accustomed to recognize and pay notes made like those in suit, it was immaterial that the by-laws provided that notes should be made in some other manner. The defendants were not harmed by the exclusion of this evidence. The existence of such a by-law could not affect the rights of the plaintiff as the holder of a note signed by the officers, within the apparent scope of the power which the corporation held them out as having, by paying notes signed like those in suit.

6. In the course of the trial it was contended by the plaintiff that it had taken the notes in suit from the Standard National Bank of New York, and that that bank had discounted them before maturity. The defendants called as a witness one Shalek, who testified that he received the notes in suit by mail in New York, the two of March 1, 1898, on March 11, 1898, and that on the last mentioned day he took them to the Standard National Bank and gave them to one Burrows, its cashier, who was then also the treasurer of the brewing company; and that at a later date the witness received the note of March 14, 1898, with another of the same date, and mailed the same to Burrows at the bank. The witness also testified that he represented the bank in erecting the brewery. The defendant then offered in evidence conversations between the witness Shalek and Burrows, and the twelfth exception is to the exclusion of such conversations.

While the bill of exceptions states that the conversations so offered were conversations tending to show a fraudulent issuance of the notes, and also to show that Burrows knew of such fraud on March 11, 1898, the statements of the bill do not go far

enough to show that the conversations were excluded wrongly. For all that appears they may have been long after the notes were negotiated, and mere ·talk between persons whose declarations when made could not bind any party to these actions. While declarations accompanying a transfer of the notes from hand to hand, and perhaps other declarations contemporaneous with the acts of those persons who were concerned in the making of the notes and in putting them into circulation, might be admissible to show that they were put into circulation fraudulently, nothing is stated from which it fairly can be inferred that the conversations between Shalek and Burrows were of this nature, or that they took place at such a time and under such circumstances as to be admissible.   Neither Shalek nor Burrows had any connection with the plaintiff, and it cannot be presumed that conversations between the two were so connected with the putting of the notes into circulation as to be admissible against the plaintiff.

After the offer to put in the conversations between Shalek and Burrows was excluded, Shalek further testified that ten or twelve days after March 11, 1898, he saw the notes on Burrows's desk at the bank ; that he saw them again at the bank between April 15 and April 18, when they were handed to him by Burrows ; that the witness kept the notes for twenty-four hours, and then handed them back to Burrows at the bank, and that at that time the words "Worcester Brewing Company," typewritten or stamped, were not on the face of the notes of March 1, 1898, and that those words on the face of these notes resembled in appearance the type and print of the bank ; also that he never received any benefit from the notes and knew nothing further about them.

7. The thirteenth, fourteenth, and fifteenth exceptions are disposed of by what has been said. After Shalek's testimony the defendants called the president, two directors, and the receiver of the brewing company, and asked each of them whether the company had received any money or benefit from either of the notes in suit, offering to show that none of the defendants received any benefit from the notes. The defendants again offered to show by the receiver, from his examination of the company's books, that those books did not show any proceeds, benefit,

discount, or moneys received from either of the notes, or any advantage to the company, and also offered in evidence the books themselves for the same purpose.

There is no ground for sustaining the exceptions to the exclusion of this evidence when so offered, substantially for the second time. The bill of exceptions discloses no testimony tending to show either a fraudulent issue of the notes, or that they were taken by the plaintiff after maturity, or that the plaintiff was not a holder in good faith and for value. The evidence offered tended to prove nothing more than want of consideration, and, as before stated, under the circumstances this was not a defence.

8. The sixteenth exception was to the exclusion of another by-law of the company relative to the powers of its treasurer, offered by the defendants for the purpose of showing that the notes in suit were not prepared, executed, and issued in accordance with the by-laws. As has been said, the plaintiff relying wholly upon the course of business of the company in issuing, taking the proceeds of, and paying other notes similar to those in suit, proof that the by-laws prescribed other methods of making and issuing notes was immaterial, and its exclusion did the defendants no harm.

9. The seventeenth exception is to the admission of the entries in the discount book of the Standard National Bank showing that the notes of March 1, 1898, were discounted by the bank, one on March 16, 1898, and the other on March 22, 1898, and that the note of March 14, 1898, was so discounted on March 21, 1898; and that two of these discounts were to the credit of the brewing company and the other to the credit of Shalek as agent. Strictly speaking, the exception to the admission of these book entries, which is the only exception stated in the bill in connection with the testimony of the witnesses as a part of whose examination the entries were produced and admitted, has not been argued by the defendants upon their brief. There was no exception to the testimony of the bookkeeper, but merely to the admission of the entries from books. There is no argument in the brief as to the entries, but merely as to the testimony of the bookkeeper.

We are of opinion that the testimony and the entries were admitted rightly. If competent, this evidence tended to show

that the notes before maturity were the property of a bank whose business it was to deal with such securities, and in which, as the evidence introduced by the defendants had shown, the funds of the brewing company were to be kept on deposit in equal amounts with its deposits in its Worcester bank. This evidence tended also to contradict the testimony of the defendants' witness Shalek in several particulars.

So far as the oral testimony of the witness Spencer, who kept the discount book and ledger, is concerned, he testified to nothing which was not within his own knowledge. He testified that he had been in the employ of the bank and had kept its discount book and ledger, which books were made up from original vouchers presented to him. That the discount numbers in the books corresponded with the numbers which he had placed on the backs of the notes when they were entered on the discount book of the bank, and that he knew nothing further concerning the transactions.

This testimony was not, as the defendants argue, purely as to bookkeeping, and exactly contrary to the contention of the defendants' brief it did purport to be of knowledge which the witness had as to the bank's possession of or title to the notes. It was not testimony made by the bank, in its own interest or otherwise. It was testimony of acts done by the bank in the regular course of business, and of such a nature as to make evidence of them competent for or against itself or any person to whose rights they were relevant.

The notes themselves were in the hands of the witness. When he had handled them in the bank and entered them on its books they were not only original vouchers, but were articles of merchandise in which it was the business of the bank to deal. It is matter of common knowledge that banks may acquire the ownership of such property by way of discount, and that they identify property so acquired by marking the separate pieces of it with different numbers, and that they enter in books descriptions of the pieces of property so acquired and held. Every such act done in a bank, by its servants or employees, with reference to a promissory note is an act of ownership, competent to be given in evidence upon the question of title, if title at that time is subsequently in dispute. The testimony of Spencer was

merely in effect this : " I was an employee of the bank. It was my duty to handle its notes which it claimed to have acquired by way of discount, to mark them with numbers, and to enter them in a book kept for that purpose. In pursuance of this course of my employment I received these notes in the bank as discounted notes, I placed upon them as such notes these numbers which you now find on them, and I entered them as such notes on the books of the bank which I have here."

The question being one of the ownership of a certain piece of property at a given time, whether the property is a promissory note or a bale of merchandise, possession and 'acts of dominion are competent evidence of ownership, and may be testified to by any one who has personal knowledge. The taking into his hand a promissory note in a bank by a clerk for the purpose of marking it as the property of the bank, and the entering of it in a book purporting to be a list of property of the bank acquired in a certain way, are in and of themselves acts of ownership competent to prove title in the bank at the time when the acts were performed; and it is no objection to their competency that the employee of the bank who performed those acts of ownership does not himself know the whole previous history of the dealing of the bank with the notes. If there is anything in that dealing, or in the subsequent action of the bank, to give the lie to these acts of ownership, it can also be put in evidence, but the acts themselves are competent. They stand in the same category, as acts of ownership, with the handling by a shopkeeper and the marking as his own, and the entry in his inventory, of bales of merchandise actually present in his store and in his own control. So too, we think, the entries themselves were admitted rightly. They were competent to prove ownership in the bank whether they were competent to prove the precedent fact of discount or not, and so were admissible, and there was no request to limit their effect. Again, they were competent, in connection with other evidence, to show that proceeds of these notes were in fact placed to the credit of the brewing company and of Shalek, who, as other evidence tended to show, was as its agent erecting its brewery. Whether the bank discounted the notes, or received and disposed of them as a broker or agent, or had them in its possession as an agent for collection,

it had power to credit their proceeds to the brewing company or to Shalek, and such credits upon the books of the bank were a detriment to itself and an advantage to the brewing company, if they came so far as to be so entered in the depositor's ledger, as the evidence as a whole tended to show was a fact. All the entries were either acts of ownership on the part of the bank, or steps in the process of giving to the brewing company or to Shalek a pecuniary credit by reason of that asserted ownership, and, so considered, the matters shown by the entry were all within the personal knowledge of the witness who made it.

This being so we need not inquire whether the books of a bank are not competent evidence generally, as was intimated in *Union Bank* v. *Knapp*, 3 Pick. 96. We are aware of no case in which it has been attempted to apply to the books of a bank the rules governing the admissibility in evidence of entries in shop books. See *Kennedy* v. *Doyle*, 10 Allen, 161 ; *Donovan* v. *Boston & Maine Railroad*, 158 Mass. 450, and cases cited.

10. The eighteenth and nineteenth exceptions are to the admission of the testimony of one Van Blackum, who kept the bank's depositors' ledger, and of the entries made by him in that ledger in the particular accounts of the brewing company and of Shalek as affected by the discounts of the notes in suit. The evidence tended to show that the proceeds of two of the notes were credited by the bank to the brewing company and of the other note to Shalek as agent. A credit to a customer in a banker's books itself transfers the property in the credit to the customer. So far as that the brewing company and Shalek received the benefit of the credits, Van Blackum was testifying to acts, and from his personal knowledge. So far as he testified to debits, he had before him the original checks or drafts which he charged as debits, and so acted from personal knowledge. So far as his entries followed those made by Spencer, the discount clerk and previous witness, both the entries which he followed and the oath of the clerk who made them were before the jury. As has been seen, those entries were competent to prove ownership on the part of the bank, and with them and the oath of the clerk who made them, and the testimony of Blackum as to what he knew of his own knowledge, the entries made by the latter were competent to prove that the brewing company and

Shalek as agent did receive benefit from the notes in suit, to the extent of the credits given them on the books of the bank by reason of the dealings of the bank with the notes.

11. The first of the ten exceptions to the charge was to a ruling that " if there were any evidence leading the jury to believe that Burrows, treasurer of the Worcester Brewing Company, was guilty of any fraudulent practices upon the Worcester Brewing Company or any other party in this case, the fact that he was also cashier of the Standard National Bank would not impute to the Standard National Bank any knowledge of such practices by which the bank would be bound." The true rule is that knowledge by or notice to an agent, while acting for his principal, of facts affecting the transaction, is constructive notice to his principal; but if while acting for his principal the agent is himself engaged in committing a fraud upon the principal, his knowledge is not constructive notice to the principal. *Indian Head National Bank* v. *Clark*, 166 Mass. 27. Assuming that the instruction quoted cannot be given a meaning consistent with the rule, it could work no prejudice to the defendants, because, as was correctly stated in a later part of the charge, there was no evidence of fraud in the case.

The witness Shalek testified that he represented the Standard National Bank in erecting the brewery of the brewing company. Brown, the president of the bank, testified, on the contrary, that Shalek was not employed by the bank as agent in any capacity, so far as he knew. But assuming that Shalek did represent the bank in erecting the brewery, and that the notes in suit were first sent to him and by him delivered to the bank, and that the proceeds of one of the notes were credited to his account as agent, that the bank allowed him to overdraw that account, and that the notes were replaced in his hands for a day, for some undisclosed purpose, after they had become the property of the bank, which is all of the admitted evidence upon which the defendants can found any contention of fraud, the whole is insufficient to justify a finding that there was any fraud upon any of the defendants, either in issuing the notes or in dealing with their proceeds. All the facts testified to were consistent with entire good faith.

12. The same considerations are applicable to and dispose of

the next exception to the charge, which was to the ruling that "knowledge of an agent of his own misconduct or fraud on other parties cannot be imputed as notice to his principal."

13. The third and fourth exceptions to the charge were to rulings that there was no evidence that Burrows was the discounting officer, or one of the discounting officers, of the bank, or as to who were its officials authorized to discount commercial paper or charged with that duty. The only evidence which the defendants now contend supports their exceptions to these rulings is Shalek's testimony that the notes were handed back to him by Burrows for a day, long after the time when, upon Spencer's testimony, they had been discounted. This evidence had no tendency to show that Burrows was a discounting officer, and these exceptions to the charge must therefore be overruled.

14. The fifth and sixth exceptions to the charge relate to the question of the effect of the omission of the words "Worcester Brewing Company" from the face of the notes of March 1, 1898, when originally indorsed and issued, and of the subsequent insertion of those words as they now appear upon the notes. The instructions excepted to were, in substance, that the notes would be binding upon the brewing company and the indorsers, even though its name was not upon the face of the notes, and that the subsequent insertion of the name by the treasurer would not be an alteration affecting the validity of the notes.

If the name was accidentally omitted, and if it was the intention of the officers who signed the notes, and of the officials and individuals who indorsed them, that the notes should be the notes of the corporation, the correction of the mistake by the insertion of the name was proper. See *Hunt* v. *Adams*, 6 Mass. 519; *Ames* v. *Colburn*, 11 Gray, 390. The facts that the notes were entered in the note book of the company, and their similarity with its forty-nine paid notes in evidence, with the single exception of the omitted name, were ample evidence that the omission of the name was an accident. The tenth instruction requested by the plaintiff and given by the court is perhaps more doubtful, but we are of opinion that a note made upon a blank form, signed by George M. Gibbs, secretary, and George Bieberbach, president, payable "to the order of our-

selves," and indorsed "Worcester Brewing Company, George Bieberbach, President, George M. Gibbs, Secretary," filled out and the name of the company indorsed in the handwriting of Gibbs, is the note of the company, within the doctrine of *Carpenter* v. *Farnsworth*, 106 Mass. 561.

15. The seventh exception to the charge was to the ruling that the question as to the liability of Paul Henry as an indorser on the note of March 14, 1898, did not affect the question of the liability of other defendants in the suits upon that note. The indorsement purporting to be that of Paul Henry follows those of all of the other defendants. The jury found that his signature was not genuine, and the defendants contend that the addition of a false or forged indorsement was a material alteration of the note which made it invalid as to the defendants. But the rights of the maker or of a prior indorser are not affected by the forgery of the name of a subsequent indorser. *Mersman* v. *Werges*, 112 U. S. 139. See *Stone* v. *White*, 8 Gray, 589. The ruling was correct.

16. The three remaining exceptions to the charge were to rulings upon the question of fraud. None of them were prejudicial to the defendants, for the reason already given, that there was no evidence of fraud in the case, and these exceptions may be overruled without further discussion.

17. The first and second of the defendants' eleven prayers for rulings of law to be given to the jury were that there was no evidence warranting a verdict for the plaintiff against any of the defendants, and none warranting a verdict against the brewing company. The defendants now contend that these prayers should have been granted, because the signature of Paul Henry on the note of March 14 was a forgery; because the name of the brewing company was added to the face of the other two notes; and because there was a failure to prove the authorized issue of the notes by the company or their execution by its officers thereto authorized. The first two of these contentions have been already disposed of adversely to the defendants. The evidence of the payment by the company of many similar notes executed and issued by the same officers and entered upon the same note book with the notes in suit disposes of the last contention.

18. The third and fourth of the defendants' prayers related to the effect upon the plaintiff's rights of the obtaining of the notes by fraud on the part of the bank, and to the putting them into circulation fraudulently. The exceptions to the refusal to give these prayers must be overruled, because there was no evidence of fraud.

19. The fifth, sixth, seventh, and ninth prayers of the defendants deal with the addition of the words " Worcester Brewing Company " upon the face of the notes of March 1, 1898, and were to the effect that if those words were added by the bank, or without the knowledge or ratification of the defendants, the plaintiff could not recover upon the notes. These prayers were refused rightly, for the reasons already stated, that if the words were omitted by mistake, all parties intending that the notes were the notes of the company, any holder of the notes had the right to supply the defect by inserting the words inadvertently omitted, and also that in law the notes were the notes of the company.

20. The eighth of the defendants' prayers was to the effect that if Brown, the plaintiff's treasurer, was a director or financial officer of the plaintiff, of the bank, and of the brewing company, and was active in the management of all of them, they might find that the plaintiff was affected by knowledge of all infirmities of each of the notes. This prayer was properly refused because there was no evidence of an infirmity knowledge of which would affect the plaintiff's right to recover.

21. The exception to the refusal to grant the tenth prayer, that there was no sufficient evidence to warrant a finding that the plaintiff was a *bona fide* holder, and as such took the notes in good faith for value before maturity, is not argued upon the defendants' brief, and we treat the exception as waived.

22. The eleventh and last prayer refused under the defendants' exception was directed to the contention that the notes were not issued in accordance with the by-laws of the brewing company. It was refused properly, because the evidence justified a finding that notes issued like those in suit were duly issued as the notes of the company.

23. The remaining exceptions relate to the taking and recording of the verdicts. The fact that the jury were at the

same time charged with three suits, in one of which the plaintiff sued the maker of three notes, in another the indorsers of two of the same notes, and in the third the indorsers of the other note, with the variety of issues raised by the pleadings, made the task of the jury more than usually complicated.

After the usual hour for the adjournment of the court for the day, and in the absence of counsel, the jury returned into court with a verdict for the plaintiff in each action.

In the action against the indorsers of the note of March 14, 1898, the verdict, as presented by the foreman, stated that the jury found for the plaintiff, and assessed damages in the sum of $5,348.22. Following these statements was the signature of the foreman. Upon the same blank, beneath the signature of the foreman, were written the words " Jury find the name of Paul Henry on note not genuine," and these words were followed by a second signature of the foreman.

In the suit upon the three notes, in which the brewing company was the only defendant, the verdict stated that the jury found for the plaintiff, and assessed damages in the sum of $5,359.60.

In the suit against the indorsers of the two notes of March 1, 1898, the verdict stated that the jury found for the plaintiff, and assessed damages in the sum of $5,359.60. Upon the presentation of these three documents the court ordered a verdict to be entered and recorded in favor of the defendant Paul Henry, in the action in which he was a co-defendant, which was the suit against the indorsers of the note of March 14, 1898. The court did not permit the other verdicts to be recorded, but directed that all the papers handed in by the jury, including the three verdicts described, be kept by the clerk, and then dismissed the jury with instructions to assemble as soon as convenient after ten o'clock the next morning, when counsel would be present. The jury reassembled at the time indicated, and counsel were then present. The court proceeded to state for the information of counsel that on the preceding day, after the close of the regular work of the court, the jury had asked from what time interest was to be computed on the notes, and had been instructed that interest should be computed from the dates of the notes, after which the jury retired, coming

again into court after a lapse of some time and reporting that they had agreed upon their verdicts. The court further stated what had occurred the evening before, when a verdict was entered and recorded in the first suit in favor of Paul Henry, one of the defendants, and that the verdicts presented by the jury had not been recorded, and repeated in presence of the jury and of counsel the purport of those verdicts, beginning with the first of the three cases. In that case the court stated that the suit was upon one note only, and that the finding of the jury went to the whole issue; and the court thereupon ordered the verdict in that case to be recorded.

With reference to the second case, the action against the brewing company as maker of the three notes, the court said that as the finding was for five thousand and odd dollars only, while the suit was upon three five thousand dollar notes, the finding apparently did not go to the whole issue. The court then addressed the jury, saying to them that upon the assumption that their purpose was to find for the plaintiff in that case, they had found only upon one of the counts; whereas, if they intended to find upon the whole issue, their duty would have been to find upon the three counts, and the verdict would not be five thousand and odd dollars, but thrice that, that is, upon the three notes set out in the declaration; and that assuming that it was the jury's intention to find upon the whole issue, it was necessary to reform the verdict so as to cover all the counts; that in the third case the declaration covered two notes of $5,000 each, so that in that case also, assuming that their finding for the plaintiff was intended to cover the whole issue, it was necessary to reform that verdict so that it would correspond with the entire issue. The court then proceeded to explain correctly to the jury how, owing to the nature of the actions, the plaintiff might have verdicts amounting in the aggregate to a sum greater than that due on all the notes. The court then, after telling the jury that the changes suggested were only necessary if he was right in his assumption that they intended to pass upon the whole issue, said that upon that assumption he had caused the clerk to prepare verdicts in accordance with it, and directed the jury to retire with the papers in the cases and with the reformed verdicts, and that if it was their intention to find for the plaintiff upon the whole

issue they might sign the reformed verdicts, and return them as their verdicts and they would be recorded.

The forty-first exception of the defendants was taken to all these proceedings had after the request of the jury as to the time from which interest should be computed, and was taken before the jury went out with the reformed verdicts. After taking this exception the defendants asked the court to instruct the jury in detail as to their right to find for the plaintiff upon one or more counts, and to find also for the defendant or defendants upon one or more counts. The next exception was to the refusal to give this ruling. After retiring to their own room, the jury returned a verdict for the plaintiff in the second action, that against the brewing company upon the three notes, assessing damages in that action in the sum of $16,059.17; and for the plaintiff in the third action, that against the indorsers of the two notes of March 1, 1898, assessing damages in the sum of $10,713.34. The final exception of the defendant was taken to the accepting and recording of these verdicts.

There was no impropriety in the course taken by the court with reference to the verdicts. The circumstances of the trial justified the court in assuming that the jury had in fact found in favor of the plaintiff upon all the notes, and that the verdicts presented by them when they first reported their agreement were intended by them to give effect to a finding for the plaintiff upon all the notes. By the action of the jury in returning the amended verdicts this assumption has become a certainty. In consequence of the mistake of the jury as to the effective way of expressing its real finding, it was regular and proper for the court, as it did, to call their attention to the fact that the original verdicts in the two cases did not give due effect to a finding for the plaintiff upon all the notes, and to give the jury an opportunity to correct their mistakes, if they had in fact found that the plaintiff was entitled to recover upon all the notes. It is regular and proper to see that such mistakes are corrected in civil cases, even though the jury has separated before such action. See *Pritchard* v. *Hennessey*, 1 Gray, 294; *Winslow* v. *Draper*, 8 Pick. 170; *Chapman* v. *Coffin*, 14 Gray, 454; *Vennard* v. *McConnell*, 11 Allen, 555; *Mason* v. *Massa*, 122 Mass. 477; *Brown* v. *Dean*, 123 Mass. 254; *Kenney* v. *Habich*, 137 Mass. 421; *Spencer* v.

*Williams,* 160 Mass. 17 ; *International Trust Co.* v. *Wilson,* 161
Mass. 80, 88 ; *Twomey* v. *Linnehan,* 161 Mass. 91, 95.

While the presiding judge called the attention of the jury to
what he properly might assume was a mistake in the form of two
of the verdicts, he gave to the jury full liberty of action, and
ample opportunity to say that the assumption was incorrect, if it
did not agree with the fact as to their finding.   The request to
give particular instructions as the jury were about to retire finally
was refused properly.   They had decided the cases and reported
their decision to the court on the preceding day, and the whole
business at the time was to make the written verdict correspond
with the decision and finding arrived at before the jury had sep-
arated after being charged with the cases.

*Exceptions overruled.*