OWEN C. CHARLES, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   March 25, 1918. — June 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* In use of highway, Imputed, Causing death, Street railway. *Corporation, Ultra vires. Street Railway. Proximate Cause. Practice, Civil,* Charge to jury, Special questions to jury, Deliberation of jury after separation upon unanswered question. *Jury and Jurors.*

Where, at the trial of an action against a street railway company for causing the death (before the enactment of St. 1914, c. 553) of a woman who was thrown from a carriage upon a public street in a city because the horse drawing the carriage fell into a hole in the street between street car rails which the defendant had undertaken to guard, there was no direct evidence as to the woman's conduct before the accident other than that she was sitting at the left hand side of the carriage beside her husband, who was driving, and there was evidence tending to show that both she and her husband were experienced drivers of horses, that there had been digging in various parts of the street and piles of dirt were about, that there were two watchmen and some lights in the neighborhood of the hole which caused the accident, that the husband was driving in the street car track, the horse trotting at a speed of about five or six miles an hour and that there was no easily visible indication of the excavation between the rails, findings are warranted that both the husband and the wife were in the exercise of due care.

If a city makes an excavation between the rails of a street car track and the street railway corporation undertakes to guard the hole and to prevent travellers from falling into it, the assumption of that duty is not an act by the corporation *ultra vires.*

If, owing to negligence of the street railway company in performing the duty thus assumed by it, the death of a person is caused, recovery for such causing of death is not limited to the $1,000 allowed by R. L. c. 51, § 17, in an action against a municipality for loss of life caused by a defect in a highway.

At the trial of an action for causing death, the judge in his charge to the jury stated, "if you find upon all the evidence that the intestate's death was hastened by this accident, then the plaintiff has sustained the burden of proving that her death was caused by the accident within the meaning of this statute. If you find that she was confined to her bed and had become weak and enfeebled, and if owing to that weakness and confinement hyperstatic pneumonia developed which caused her death, then you would also be warranted in finding that her death was due to the accident. If you should further find that she had some kidney trouble prior to the accident and that owing to the accident it was aggravated and made acute and that her death was materially hastened by the accident, then you would properly be warranted in finding that her death was caused by the accident." *Held,* that such instructions were not fairly susceptible of the construction that there could be recovery even though the confinement to the bed and consequent weakness were not the result of the accident or their proximate cause, but that the instructions meant that there could be no recovery except for consequences flowing from the fall as their operative cause, which was a correct statement of the law.

The declaration in an action of tort by an administrator contained three counts, one for conscious suffering of the intestate, one for damage to his property and one for causing his death. Special questions were submitted to the jury on a Thursday relating to due care of the plaintiff, negligence of the defendant and damages, it being agreed by counsel that the answers to the questions should be regarded as a sealed verdict in that the formal opening of the verdicts one way or the other might be done when the jury reconvened on the next court day, which was Monday. The jury separated at eleven o'clock at night on Thursday. When court reconvened on Monday, the foreman of the jury announced agreements on the answers to all the questions except one, which related to the damages to be assessed under the count for causing death. From the other answers it appeared that the jury had found that the intestate was in the exercise of due care and that the defendant was negligent. The foreman, in answer to an inquiry by the judge, stated that he thought that an agreement might be reached as to the unanswered question. Upon inquiry, the judge was informed that no member of the panel had talked with anybody in any manner about the case. The judge thereupon ordered the jury to return to their room and consider the unanswered question further. They did so and agreed upon an answer upon which as a basis the judge ordered a finding for the plaintiff upon the appropriate count of the declaration. *Held,* that the action of the judge was not an improper exercise of his discretion.

TORT by the administrator of the estate of Emma M. Charles, with a declaration, as amended, in five counts, only the third, fourth and fifth of which are material. In these counts it was alleged that the defendant undertook for its own purposes and in its own interest to guard properly a hole or trench in Washington

Street in that part of Boston called Dorchester between its outward bound tracks, and to give proper and sufficient warning and notice of the existence of the hole so that the highway at that place might be reasonably safe for travellers, and that it had failed properly to perform the duty thus assumed, so that the plaintiff's intestate on July 8, 1912, when riding on the highway in a carriage, was thrown to the ground and received injuries which resulted in her death. In the third count the plaintiff claimed damages for conscious suffering, in the fourth damage to the horse and carriage, and in the fifth the statutory penalty for causing the death of the plaintiff's intestate. Writ dated April 9, 1913.

In the Superior Court the case was tried before *Sisk*, J. The material evidence is described in the opinion. At the close of the evidence, the defendant asked for and the judge refused to make rulings, which, so far as material to this action, were as follows:

"6. There is no evidence that Emma M. Charles at the time of this accident was in the exercise of due care, and therefore the verdict of the jury must be for the defendant . . . "

"7. The mere fact that the late Emma M. Charles was sitting in the wagon beside her husband is not evidence of due care on her part."

"9. Under no circumstances can the jury find a verdict against the defendant company for the death of Emma M. Charles in excess of $1,000.

"10. If the jury shall find that the defendant company voluntarily assumed the work of watching the hole in question, which duty primarily rested upon the city, and if the jury shall also find that the defendant company was negligent in the manner in which they attempted to perform this work, the defendant company cannot be held responsible to any greater extent than could the city, had the city been performing the work and been found negligent in the same way."

The judge thereupon submitted to the jury special questions, which, together with the action of the jury thereon and the course of the trial relating thereto, are described in the opinion. Upon the return of the answers to the questions, the judge ordered a verdict for the plaintiff on the third count in the sum of $2,250, on the fourth count in the sum of $150 and on the fifth count in the sum of $3,750. The defendant alleged exceptions.

*E. P. Saltonstall, (C. W. Blood* with him,) for the defendant.

*D. E. Hall,* for the plaintiff.

RUGG, C. J.   This is an action of tort.   The declaration was in five counts, three of which are material, one to recover for the personal injuries, one for the property damage, and one for the penalty for causing the death of the plaintiff's intestate, who was his wife.   The plaintiff and his wife were travelling together with their daughter, then about ten years old, on Washington Street in Dorchester, in an open runabout driven by the plaintiff, who was a livery stable keeper, when the horse went into an excavation in the street and the intestate was thrown upon the pavement, receiving injuries as a result of which it might have been found that she died several months later.

There was evidence sufficient to support a finding of due care on the part of the intestate.   She was travelling with an experienced horseman in the evening on a city street.   Confessedly there had been considerable digging in different parts of the street and there were several piles of dirt.   Two watchmen at least were in the neighborhood, whose duty it was to guard the places of danger and to give warning to travellers.   There was conflicting testimony as to the number and position of lights in the street.   The plaintiff was driving the horse in a street railway track, trotting at an estimated speed of from five to six miles an hour, and there was some evidence tending to show that there was no easily visible indication of the excavation between the rails of the track into which the horse fell.   There was no direct testimony as to the conduct of the wife immediately before the accident other than that she was sitting on the left side of the vehicle.   That was where she ought to have been sitting.   She was herself an experienced driver of horses, she was with her small daughter in a vehicle driven by her husband amid a more or less distracting series of obstructions on a city street at night.   The judge instructed the jury that want of due care on the part of the husband would be imputed to the wife.   There was positive evidence tending to show that he was in the exercise of due care.   The verdict of the jury under such instructions must be taken to establish due care on his part.   Such conclusion was not unwarranted.   *Hurley* v. *Boston,* 202 Mass. 68.   There is nothing in the record which requires the conclusion that she ought as a reasonably careful person to have done

anything more than trust in silence to the experienced skill of her husband. Further positive acts of care on her part need not be shown, but may be gathered from simple absence of fault under circumstances which fairly exclude the inference of negligence. *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379, 382. *Duggan* v. *Bay State Street Railway*, *ante*, 370. *Shultz* v. *Old Colony Street Railway*, 193 Mass. 309. *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262, 264.

The defendant's liability on the death count was not limited to $1,000. The excavation which caused the injury was made by the city of Boston. But since it extended under the tracks of the defendant, the latter for its convenience in operating its cars maintained a watchman to guard so much of the excavation as was between the rails, and to prevent travellers from falling into it. The city was primarily responsible, having dug the hole in the street. Its liability in case action had been brought against it would have been limited under the statute to $1,000. But liability for causing the death of a human being by negligence under all our statutes is in the nature of a penalty. It varies in amount with different classes of corporations and persons. *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8. The defendant had sufficient interest in the matter of guarding this excavation in connection with the maintenance of its own business of transporting passengers to justify it in assuming the duty of guarding it and protecting the public from its dangers. Such an undertaking was not *ultra vires*. Therefore, for any act of negligence in this regard causing the death of anybody, it was liable to the penalty imposed by the statute upon it for such an offence. It must pay the penalty established by law for its negligence, and is not limited to that which might have been imposed upon the city for its negligence having like result. The case upon this point is governed in principle by *Phinney* v. *Boston Elevated Railway*, 201 Mass. 286.

The jury were instructed that, "if you find upon all the evidence that Mrs. Charles' death was hastened by this accident, then the plaintiff has sustained the burden of proving that her death was caused by the accident within the meaning of this statute. If you find that she was confined to her bed and had become weak and enfeebled, and if owing to that weakness and confinement

hyperstatic pneumonia developed which caused her death, then you would also be warranted in finding that her death was due to the accident.  If you should further find that she had some kidney trouble prior to the accident and that owing to the accident it was aggravated and made acute and that her death was materially hastened by the accident, then you would properly be warranted in finding that her death was caused by the accident." This instruction is not fairly susceptible of the construction that there could be recovery even though the confinement to the bed and consequent weakness were not the result of the accident as their proximate cause.  Taken as a whole it means that there could be no recovery except for consequences flowing from the fall as their operative cause.  The instruction was in accordance with *Wiemert* v. *Boston Elevated Railway*, 216 Mass. 598, and *Larson* v. *Boston Elevated Railway*, 212 Mass. 262.

The case at bar was tried with two other actions, one by the husband as the next friend of his daughter, and one by himself in his own right, to recover for injuries and loss arising from the same accident.  The judge did not submit the cases for general verdicts, but by agreement of counsel asked the jury to answer eight questions.  Seven of these related (1) to the due care of the husband and (2) of the daughter, (3) to the negligence of the servants of the defendant, (4) the consequential damages of the husband and father for expenses for the sickness of his wife and daughter, (5) the damages of the daughter, (6) the conscious suffering of the wife, (7) the damages to the horse and wagon (which were the property of the wife).  The eighth question was in these words: "If the plaintiff, Owen C. Charles, as Administrator, is entitled to recover for the death of Mrs. Charles, what sum is he entitled to recover for her death?"

The jury retired for consideration of the cases, on Thursday, the eleventh day of October, it being agreed by counsel that "the answers to the questions may be regarded as a sealed verdict in that the formal ordering of the verdicts one way or the other may be done when the jury reconvene on Monday morning." The next court day was Monday, October 15.  The jury separated at eleven o'clock on Thursday night, presumably by order of the judge, though his directions upon that point are not disclosed. When the court reconvened on the following Monday, the foreman

of the jury announced that they had agreed on the answers to all the questions except number 8. Thereupon, in response to the inquiry by the judge whether there was any prospect of agreement if the case was further submitted, the foreman replied, "I think there is a chance of reaching an agreement. We are pretty close together as it is, very close, in fact." The defendant seasonably excepted to every step of this proceeding and contended that there had been a disagreement. The judge then sent the jury out to ascertain and report whether any member of the panel had talked with anybody and presently was assured by them in open court that every juryman stated that he had not talked in any manner with anybody about the case. The jury thereupon were sent out for further consideration of the eighth question, and subsequently returned an answer assessing damages. The judge then ordered verdicts to be returned upon each of the three counts in the declaration in accordance with the answers.

The charge of the judge on the question of due care is set out in full. No distinction was made as to the degree, kind or extent of proof of due care requisite for recovery upon the counts for conscious suffering and for death, and no exception was taken in this respect. Doubtless no such distinction was required under the circumstances. See *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, 521. Therefore, when the jury had answered that servants of the defendant were negligent and that the plaintiff was entitled to recover a sum for the conscious suffering of the wife, every element necessary to require them, under the charge of the judge, to assess damages for her death had been found by the jury, and the only thing which they had not found was the amount of damages or penalty.

But it was inevitable that some damages or penalty must be found, or their answers would be inconsistent. It was said in *Mason* v. *Massa,* 122 Mass. 477 at page 480, "It is a well settled and long established practice that a jury, when they have returned a finding that is incomplete and defective, may be sent out again in order to correct the error, even though they had separated after their first finding before they came into court. *Pritchard* v. *Hennessey,* 1 Gray, 294. *Commonwealth* v. *Carrington,* 116 Mass. 37. After a general finding for the plaintiff without an assessment of damages, they may be sent out again for the purpose of

making such assessment. And this may be done although there may have been an adjournment of the court in the meantine. *Chapman* v. *Coffin,* 14 Gray, 454. *Winslow* v. *Draper,* 8 Pick. 170. *Lawrence* v. *Stearns,* 11 Pick. 501." Further consideration by a jury after a separation following the committal of a case to them is not necessarily fatal. Where it is apparent that they have or may have proceeded upon a misconception of the principles of law laid down for their guidance, the safe and proper course is for the court to instruct them again as to the law and request them to deliberate further. *Kenney* v. *Habich,* 137 Mass. 421, 423. It was said by Chief Justice Gray in *Commonwealth* v. *Tobin,* 125 Mass. 203 at page 206, as to the practice in civil cases when the jury have been permitted to separate after agreeing upon and sealing up a verdict: "If the written verdict does not pass upon the whole case, or the jury refuse to affirm it, the court may send them out again, and a fuller or different verdict afterwards returned will be good." In *Pritchard* v. *Hennessey,* 1 Gray, 294, 296, occur these words: "The practice of sending out a jury, when they return a verdict that is absurd or defective, has existed more than four hundred years. . . . It is objected by the plaintiff, that the jury could not be sent out in this case, because they had separated, after their first finding, before they came into court. But the cases cited by him do not support this objection; and the contrary appears from the cases of *Edelen* v. *Thompson,* 2 Har. & Gill, 31, *Wolfran* v. *Eyster,* 7 Watts, 38, and *Sutliff* v. *Gilbert,* 8 Ohio, 405, 409. So where a jury separated after having agreed, and afterwards came into court with a sealed verdict, which one of the jurors refused to affirm, the court sent them out, and they agreed on a verdict, which the court refused to set aside. *Bunn* v. *Hoyt,* 3 Johns. 255. *Douglass* v. *Tousey,* 2 Wend. 352." *Chapman* v. *Coffin,* 14 Gray, 454. *Levine* v. *Globe Street Railway,* 177 Mass. 204. *Brown* v. *Dean,* 123 Mass. 254, 267, *Commonwealth* v. *Carrington,* 116 Mass. 37, 39. *Burrill* v. *Phillips,* 1 Gall. 360. *Downer* v. *Baxter,* 30 Vt. 467, 474. *Armleder* v. *Lieberman,* 33 Ohio St. 77. *Nims* v. *Bigelow,* 44 N. H. 376. *Evans* v. *Foss,* 49 N. H. 490. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 593–595. *McManus* v. *Thing,* 208 Mass. 55, 59. *Warner* v. *New York Central Railroad,* 52 N. Y. 437, 440. *Hatch* v. *Attrill,* 118 N. Y. 383, 388. See also *Vennard* v. *McConnell,* 11 Allen, 555, 562,

563, and Co. Lit. 227 b. While the interval between the separation and the reassembling of the jury was longer than has been intimated in some cases was permissible, *Winslow* v. *Draper,* 8 Pick. 170, there appears to be no reason to think that justice has not been done or that the defendant has suffered any prejudice. Great care was taken to be assured that in fact the interests of the parties and of the public to the end that right results be reached had not been jeopardized by anything which had occurred in the interval. The conduct of the judge before directing the jury to consider the question further imports a finding that nothing had occurred during the interval of separation to imperil in the slightest degree the purity and absolute impartiality of the jury. The case at bar comes within the language of Chief Justice Shaw in *Commonwealth* v. *Roby,* 12 Pick. 496, at page 516: "it is not every irregularity which will render the verdict void and warrant setting it aside. This depends upon another and additional consideration, namely, whether the irregularity is of such a nature as to affect the impartiality, purity and regularity of the verdict itself." There is nothing in the point decided in *Spencer* v. *Williams,* 160 Mass. 17, which requires a different result. The same is true of *Commonwealth* v. *Durfee,* 100 Mass. 146, and *Commonwealth* v. *Dorus,* 108 Mass. 488, for the reasons pointed out in *Commonwealth* v. *Tobin,* 125 Mass. 203, at page 206.

*Exceptions overruled.*